## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

HERBERT HAILEY II,                )
                                  )
          Petitioner,             )
                                  )
     vs.                          )        **Case No. CIV-07-146-T**
                                  )
CHARLES RAY, Warden,[1]           )
                                  )
          Respondent.             )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking habeas relief from his state court convictions. United States District Judge Ralph G. Thompson referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Respondent filed a motion to dismiss to which Petitioner has responded. Thus, the motion to dismiss is now at issue. For the following reasons, it is recommended that the motion be denied.

## BACKGROUND

By this action, Petitioner challenges his convictions for 23 counts of various sexual offenses for which he was sentenced on July 8, 2003, to varying terms of imprisonment ranging from five years to life. Petition, p. 2, Ex. A;[2] Case No. CF-01-1679, District Court of Oklahoma County, Docket. On direct appeal, the Oklahoma Court of Criminal Appeals

---

[1] In April of 2007, Charles Ray became the Warden of Cimarron Correctional Facility. Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is substituted in as the Respondent in this suit.

[2] Citations to page numbers of the petition refer to the typewritten page numbers in the upper left corner of each page.

affirmed all but one of Petitioner's convictions.[3]  Petition, Ex. A; Case No. F-2003-802, Oklahoma Court of Criminal Appeals, Docket.  Petitioner did not seek certiorari from the United States Supreme Court.  Petition, p. 3.  On March 3, 2006, he filed two applications for state post-conviction relief: one in the trial court and one in the Oklahoma Court of Criminal Appeals.  Id. at 4; Case No. PC-2006-243, Oklahoma Court of Criminal Appeals, Docket; Case No. CF-01-1679, District Court of Oklahoma County, Docket.  Petitioner voluntarily dismissed the application filed with the Oklahoma Court of Criminal Appeals on April 6, 2006.  Case No. PC-2006-243, Oklahoma Court of Criminal Appeals, Docket. The trial court denied Petitioner's application for post-conviction relief and the Oklahoma Court of Criminal Appeals entered a judgment affirming the trial court's denial on January 26, 2007.  Petition, p. 4; Case No. CF-01-1679, District Court of Oklahoma County, Docket; Case No. PC-2006-1145, Oklahoma Court of Criminal Appeals, Docket.

Petitioner seeks habeas relief on four grounds.  In Ground One, Petitioner claims that appellate counsel rendered ineffective assistance by failing to raise certain ineffective assistance of trial counsel claims on direct appeal.  In Ground Two, Petitioner alleges that prosecutorial misconduct denied him a fair trial.  In Ground Three, Petitioner claims that the trial judge was biased against him, abused her discretion, and deprived him of a fair and impartial trial.  Finally, in Ground Four, Petitioner asserts that his rights under the Fourth and Fourteenth Amendments were violated by a search of his computer.  Petition, Ex. D.

---

[3] Originally, Petitioner was convicted of 24 charges and given sentences ranging from fifteen years to life imprisonment.  The Oklahoma Court of Criminal Appeals vacated one conviction and life sentence and reduced the sentences for four other convictions, but affirmed the remaining convictions and sentences. Petition, Ex. A; Case No. F-2003-802, Oklahoma Court of Criminal Appeals, Docket.

The petition was promptly examined in accordance with Rule 4 of the Rules Governing Section 2254 Cases and, as it appeared the petition was untimely, the undersigned entered an order directing Petitioner to show cause why it should not be dismissed. The Attorney General was given the opportunity to file a reply on behalf of Respondent to the response. Petitioner filed his response, but instead of replying to Petitioner's response to the show cause order, Respondent filed a motion to dismiss contending that Petitioner's application for federal habeas relief is untimely.

DISCUSSION

A.    *Limitations Period*

The Antiterrorism and Effective Death Penalty Act (AEDPA) established a one-year limitations period governing the claims of habeas petitioners in state custody. Rhine v. Boone, 182 F.3d 1153, 1154 (10th Cir. 1999). The one-year limitations period runs from the latest of:

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). Unless a petitioner alleges facts implicating subsections (B), (C), or (D), the limitations period generally begins to run from the date on which the

judgment became final.  See Preston v. Gibson, 234 F.3d 1118, 1120 (10th Cir. 2000). Petitioner has  not alleged anything to suggest that subsections (B), (C), or (D) may apply to the petition, so its timeliness will be evaluated from the date Petitioner's convictions became final by the expiration of the time for seeking direct review.

State court records show that Petitioner was sentenced on July 8, 2003, and that the Oklahoma Court of Criminal Appeals entered a judgment in Petitioner's direct appeal on December 3, 2004.  Petitioner did not file a petition for certiorari with the United States Supreme Court, so his convictions became final for limitations purposes 90 days later on March 3, 2005, after the time period for seeking certiorari expired.[4]  See 28 U.S.C. § 2101; see also Sup. Ct. R. 13; Rhine, 182 F.3d at 1155.   Therefore, the one-year limitations period  began to run on March 4, 2005, and, absent tolling, expired on March 4, 2006.  See Fed. R. Civ. P. 6(a) ("In computing any period of time . . . the day of the act, event, or default from which the designated period of time begins to run shall not be included."); see also United States v. Hurst, 322 F.3d 1256, 1261 (10th Cir. 2003) (holding that Rule 6(a) and the anniversary method should be applied to calculate AEDPA limitations periods).

---

[4] The trial court amended its judgments of conviction once on August 28, 2003, while Petitioner's direct appeal was pending and again on February 2 and 8, 2005, after the Oklahoma Court of Criminal Appeals issued its mandate in the direct appeal.  Case No. CF-01-1679, Oklahoma County District Court, Docket.  Petitioner suggests that these amended judgments should be considered in calculating the date on which his convictions became final.  Response, p. 2; Petitioner's Objection to Respondent's Motion to Dismiss, unnumbered p. 2. This proposition is unavailing since the judgments of conviction did not become final until his time to seek certiorari expired on March 3, 2005, and the amendments to the judgments of conviction occurred before that time.

B.     *Statutory Tolling*

The limitations period for seeking § 2254 relief is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2241(d)(2); Hoggro v. Boone, 150 F.3d 1223, 1226 n.3 (10th Cir. 1998).

Petitioner filed an application for state post-conviction relief on March 3, 2006, one day before the limitations period expired.  Petition, p. 4; Case No. CF-01-1679, Oklahoma County District Court, Docket.  That application was pending in the Oklahoma courts until January 26, 2007, when the Oklahoma Court of Criminal Appeals entered a judgment affirming the denial of post-conviction relief.  Petition, p.4; Case No. PC-2006-1145, Oklahoma Court of Criminal Appeals, Docket.  After the Oklahoma Court of Criminal Appeals entered its judgment, Petitioner had one day of the one-year limitations period remaining in which to file a petition for federal habeas relief.  See Lawrence, 127 S. Ct. at 1083-84 (holding that limitations period begins to run immediately upon the conclusion of state post conviction review and is not tolled during the 90-day period in which a writ of certiorari may be sought from the Supreme Court); see also Rhine, 182 F.3d at 1156.[5]  However, the petition was not filed until February 6, 2007, several days

_____

[5] Petitioner seems to contend that the one-year limitations period first started to run on February 8, 2007, the date when the Oklahoma Court of Criminal Appeals issued its mandate from Petitioner's appeal of the denial of his application for post-conviction relief.  Response, p. 2.  This assertion is unpersuasive. The tolling of the limitations period during the pendency of state-post conviction proceedings ceases once post-conviction relief is denied by the state's highest court.  Lawrence v. Florida, 127 S. Ct. 1079, 1083-84 (2007); see also Rhine, 182 F.3d at 1156.  Therefore, the limitations period that was tolled during the pendency of Petitioner's state court post-conviction proceedings began to run immediately after the Oklahoma Court of Criminal Appeals entered its order affirming the trial court's denial of post-conviction relief on January 26, 2007.  Subsequent actions carrying out the final order in the post-conviction proceeding did not extend the tolling period.

after the tolling of the limitations period ceased on January 26, 2007, and the deadline to file the petition expired on January 27, 2007. Petition, p. 2. Absent a showing that warrants equitable tolling or application of the prison mailbox rule, the petition is untimely.

C.    Equitable Tolling

The limitations period may be subject to equitable tolling under circumstances where application of the period of limitation would possibly render the habeas remedy "inadequate and ineffective." Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998). However, equitable tolling is limited to "rare and exceptional circumstances." Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000). To justify equitable tolling, a petitioner bears the burden to "demonstrate[] that the failure to timely file was caused by extraordinary circumstances beyond his control." Marsh, 223 F.3d at 1220. Simple excusable neglect is insufficient. Gibson, 232 F.3d at 808.

Petitioner has not alleged any facts indicating that the failure to timely file the petition was caused by circumstances beyond his control. Petition, p. 13; Response, pp. 1-2. Further, there is nothing unique or unusual about the allegations of the petition which suggest that this case presents the rare circumstance in which equitable tolling should be applied. Therefore, application of the equitable tolling doctrine is not appropriate here.

D.    Prison Mailbox Rule

Under the prison mailbox rule, a pro se prisoner's notice of appeal is considered filed when the prisoner delivers it to prison officials for mailing regardless of the date the

6

court actually receives it.  <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988).  The prison mailbox rule has been extended to the filing of petitions for § 2254 relief.  <u>See</u>   <u>Marsh v. Soares</u>, 223 F.3d 1217, 1218 n.1 (10th Cir. 2000).  Though the requirements of the prison mailbox rule originated in the notice of appeal context and are incorporated into the Federal Rules of Appellate Procedure, they are applied uniformly to all prisoner filings given the benefit of the rule.  <u>Price v. Philpot</u>, 420 F.3d 1158, 1165 (10th Cir. 2005); <u>see also</u> <u>United States v. Ceballos-Martinez</u>, 387 F.3d 1140, 1143-44 (10th Cir. 2004) ("[W]e read Fed. R. App. P. 4(c)(1) [which incorporates the prison mailbox rule into the Federal Rules of Appellate Procedure] to provide the mandatory method by which a prisoner . . . proves compliance with the mailbox rule.").

   To claim the benefit of the prison mailbox rule, a prisoner bears the burden to prove that the pleading in question was filed timely.  <u>Price</u>, 420 F.3d at 1165.  There are only two ways a prisoner may establish timely filing.  <u>Ceballos-Martinez</u>, 387 F.3d at 1143.  "[I]f the prison has a legal mail system, then the prisoner *must* use it as the means of proving compliance with the mailbox rule."  <u>Id.</u> at 1144 (emphasis added); <u>see also</u> <u>United States v. Leonard</u>, 937 F.2d 494, 495 (10th Cir. 1991) (refusing to give prisoner the benefit of the prison mailbox rule where the prisoner deposited a notice of appeal in the regular prison mail because the prison mailbox rule was established in a case where the prisoner relied on the prison's legal mail procedures which logged mail at the time and date it was received to provide a clear date for determining the date of the filing).  If a prisoner does not have access to an adequate legal mail system, he must prove compliance with the mailbox rule by submitting a notarized statement or declaration

made under penalty of perjury that sets forth the date on which the documents were given to prison authorities and attests that postage was prepaid.  28 U.S.C. § 1746; Ceballos-Martinez, 387 F.3d at 1144-45; Price, 420 F.3d at 1165 n.6.

Petitioner alleges that the prison mailbox rule should be applied to the filing of the petition because it included "a verified, certification of mailing" showing that he deposited the petition in a prison mail receptacle on Saturday, January 27, 2007. Response, p. 2.  If Cimarron had a legal mail system in place, Petitioner was required to use it in order to claim the benefit of the prison mailbox rule.  See Ceballos-Martinez, 387 F.3d at 1144; see also Leonard, 937 F.2d at 495 (declining to extend the prison mailbox rule to filings deposited in regular prison mail).  Thus, the threshold issue is whether Cimarron had a legal mail system when Petitioner placed the petition in the mail.

The Respondent's brief provides no enlightenment to the Court as to whether Cimarron Correctional Facility has a legal mail system in place or how it operates. Instead, Respondent simply "refer[s]" the Court to an exhibit that he contends shows that Cimarron's mail room received outgoing legal mail from Petitioner addressed to the clerk of this Court after the expiration of the limitations period.  Brief in Support of Motion to Dismiss, p. 3.  Petitioner concedes that Cimarron has a mail room, but he alleges that the mail room is often not accessible to inmates for security reasons and that it is not open on Saturdays, Sundays or holidays.  He claims that it has been the common practice at Cimarron to place legal mail in the mailbox outside the facility rotunda where he placed the petition.  Petitioner's Objection to Respondent's Motion to Dismiss, unnumbered p. 3.  In fact, he claims that the particular mail box he used is the main part of Cimarron's

8

mail system and is the only mail system Cimarron has for inmates.  Respondent has not explained Cimarron's legal mail system or sought leave to file a reply addressing Petitioner's claim.  The exhibit Respondent has provided to the Court is simply a typed log showing legal mail addressed to this Court from the Petitioner was "Received/Sent" on February 5, 2007.  If Petitioner's allegations are true, this could be the date the mail room logged the mail that had earlier been placed in the mail box.  Thus, at this point it is unclear what Cimarron's legal mail system procedures are and whether Petitioner complied with them.

Considering this uncertainty and Petitioner's allegation that he followed the common practice at Cimarron for mailing legal documents on weekends, the undersigned finds that the motion to dismiss should be denied.  If all of Petitioner's allegations are true, then he has complied with the legal mail system in place at Cimarron and the prison mailbox rule should be applied to his benefit.  In that case Petitioner's January 27, 2007, deposit of the petition in the mailbox at Cimarron would be the petition's filing date and it would be timely.

<u>RECOMMENDATION</u>

Based upon the foregoing analysis, it is recommended that Respondent's motion to dismiss the petition for a writ of habeas corpus [Doc. No. 14] be **DENIED.**  In light of this recommendation, Petitioner's "Combined Motion for Transcripts and Appointment of Counsel at No Expense" [Doc. No. 9] is **DENIED** without prejudice to submission at a

later date.[6]  The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court on or before August 6, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein.  <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991).

**ENTERED this 16th day of July, 2007.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE

---

[6] In contrast to direct appeals, indigent inmates have no right to the assistance of counsel in a post-conviction collateral attack. <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987); <u>Swazo v. Wyo. Dep't of Corr. State Penitentiary Warden</u>, 23 F.3d 332, 333 (10th Cir. 1994). "In most federal courts, it is the practice to appoint counsel in post-conviction proceedings only after a petition for post-conviction relief passes initial judicial evaluation and the court has determined that issues are presented calling for an evidentiary hearing." <u>Johnson v. Avery</u>, 393 U.S. 483, 487 (1969).  This case is currently in its initial phases and there has been no determination that an evidentiary hearing will be necessary to dispose of the matter.

Further, when Respondent files his response to the petition, Rule 5 of the Rules Governing Section 2254 Cases requires him to attach such transcripts as are relevant and Rule 7 permits the Court to direct parties to expand the record if necessary.  Thus, the Court can at that time address any further requests by Petitioner that certain transcripts be provided.